**U.S. Department of Ju___ _e**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

**A**

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Mastin, Yvette M.**
**2323 South Voss Road,  Ste 400**
**Houston, TX  77057-3820**

**Office of the District Counsel/HOU**
**126 Northpoint Drive**
**Houston, TX  77060**

**Name: DEMIRAJ, RUDINA**
**Riders: 95-218-802**

**A95-218-801**

**Type of Proceeding: Removal**

**Type of Appeal: Case Appeal**

**Date of Appeal:  10/11/2005**

<u>D</u>ate of this notice: 06/07/2006

**Appeal filed by:   Alien**

## NOTICE -- BRIEFING EXTENSION REQUEST GRANTED

Alien's <u>original</u> due date: 06/07/2006          DHS' <u>original</u> due date: 06/28/2006

o     The request by the alien for an additional amount of time to submit a brief, which
       was received on  06/06/2006, is GRANTED.

o     The alien's brief must be **received** at the Board of Immigration Appeals on or before
       06/28/2006.

o     The DHS' brief must be **received** at the Board of Immigration Appeals on or before
       07/19/2006.

## <u>PLEASE NOTE</u>

      **WARNING:**    If you indicated on the Notice of Appeal (Form EOIR-26) that you will file a
brief or statement, you are expected to file a brief or statement in support of your appeal.  If you fail
to file the brief or statement within the time set for filing, the Board may summarily dismiss your
appeal.  *See* 8 C.F.R. § 1003.1(d)(2)(i)(E).

      <u>The Board generally does not grant extensions for more than 21 days</u>.  Each party's current
due date is stated above.

      <u>The Board rarely grants more than one briefing extension to each party</u>.  Ther(

95-218-801

have been granted an extension, you should assume that you will not be granted any further extensions.

If you file your brief late, you must file it along with a motion for consideration of your late-filed brief. There is no fee for such a motion. The motion must set forth in detail the reasons that prevented you from filing your brief on time. You should support the motion with affidavits, declarations, or other evidence. Only one such motion will be considered by the Board.

## FILING INSTRUCTIONS

**IMPORTANT: The Board of Immigration Appeals has included two copies of this notice. Please attach one copy of this notice to the front of your brief when you mail or deliver it to the Board, and keep one for records. Thank you for your cooperation.**

Use of an over-night courier service is strongly encouraged to ensure timely filing.

If you have any questions about how to file something at the Board, you should review the Board's Practice Manual and Questions and Answers at www.usdoj.gov/eoir.

Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other documents. If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the DHS at the address shown above. Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them. Any submission filed with the Board without a certificate of service on the opposing party will be rejected.

Filing Address:

To send by courier or overnight delivery service, or to deliver in person:
Board of Immigration Appeals,
Clerk's Office,
5107 Leesburg Pike, Suite 2000,
Falls Church, VA 22041

Business hours: Monday through Friday, 8:00 a.m. to 4:30 p.m.

To mail by regular first class mail:
Board of Immigration Appeals
Clerk's Office
P.O. Box 8530
Falls Church, VA 22041.



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Mastin, Yvette M.**
**2323 South Voss Road**
**Suite 400**
**Houston, TX 77057-3820**

**Office of the District Counsel/HOU**
**126 Northpoint Drive**
**Houston, TX 77060**

**Name: DEMIRAJ, RUDINA**
**Riders: 95-218-802**

**A95-218-801**

**Type of Proceeding: Removal**

**Date of this notice: 10/12/2005**

**Type of Appeal: Case Appeal**

**Filed by:   Alien**

<u>**FILING RECEIPT FOR APPEAL**</u>

The Board of Immigration Appeals acknowledges receipt of your appeal and fee or fee waiver request (where applicable) on 10/11/2005 in the above-referenced case.

<u>**PLEASE NOTE**</u>:

In all future correspondence or filings with the Board, please list the name and alien registration number ("A" number) of the case (as indicated above), as well as all of the names and "A" numbers for <u>every</u> family member who is included in this appeal.

If you have any questions about how to file something at the Board, you should review the Board's <u>Practice Manual and Questions and Answers</u> at www.usdoj.gov/eoir.

<u>Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals</u> -- including correspondence, forms, briefs, motions, and other documents.   If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the DHS at the address shown above.  Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them.  <u>Any submission filed with the Board without a certificate of service on the opposing party will be rejected.</u>

**WARNING:** If you leave the United States after filing this appeal but before the Board isssues a decision, your appeal will be considered withdrawn and the Immigration Judge's decision will become final as if no appeal had been taken (unless you are an "arriving alien" as defined in the regulations under 8 C.F.R. section 1001.1(q)).

thomasru



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
2320 LA BRANCH STREET
HOUSTON, TEXAS

IN THE REMOVAL PROCEEDINGS      )      File Numbers:  A95 218 802
                                )
REDIOL DEMIRAJ                  )
                                )

**RESPONDENT'S SET OF EXHIBITS TO BE OFFERED INTO EVIDENCE IN
SUPPORT OF HER APPLICATION FOR ASYLUM, WITHHOLDING OF REMOVAL
PURSUANT TO THE IMMIGRATION AND NATURALIZATION ACT AND
WITHHOLDING OF REMOVAL PURSUANT TO CONVENTION AGAINST
TORTURE**

TO THE HONORABLE JUDGE ZIMMER:

Undersigned counsel has ascertained from the evidence submitted in support his mother's

application that Respondent Rediol Demiraj has an independent claim to asylum, withholding of

removal pursuant to the INA and withholding of removal pursuant to CAT's.  Attached are

Respondent's Application and Set of Exhibits, which are offered into evidence in the above

referenced matter.  Copies of the same have been furnished to the Office of the Chief Counsel.

Respectfully submitted,

By: _____
     Yvette M. Mastin
     MN Bar NO. 0306770
     S.D. of Texas Fed. NO. 27987
     2323 S. Voss, Suite 400
     Houston, TX 77057
     Tel. No. 832-251-3662
     Fax. No. 832-251-3664
     ATTORNEY FOR
     REDIOL DEMIRAJ

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing **RESPONDENT'S SET OF EXHIBITS TO BE OFFERED INTO EVIDENCE IN SUPPORT OF APPLICATION FOR ASYLUM, WITHHOLDING OF REMOVAL PURSUANT TO THE IMMIGRATION AND NATURALIZATION ACT AND WITHHOLDING OF REMOVAL PURSUANT TO CONVENTION AGAINST TORTURE** was mailed to the Office of District Counsel, Department of Homeland Security on August 29, 2005 at the following address:

Office of the District Counsel
Department of Homeland Security
P.O. Box 670049
Houston, Texas 77267-0049

Yvette M. Mastin

# INDEX OF EXHIBITS

A.  Copy of the Reasonable Fear Interview Q& A conducted by Asylum Officer Shannon Simmons with Edmond Demiraj on July 1, 2003. In this interview Mr. Demiraj describes the origin of the blood feud between Bedini and Demiraj and the fact that Bedini shot him prior to his return to the United States to seek safety and asylum. pp. 1-7.

B.  Copy of photographs of the gunshot wound sustained by Edmond Demiraj after he was shot. pp. 8.

C.  Copy of acknowledgement to undersigned counsel about Respondent's husband dated December 12, 2002 from Immigration and Naturalization Service, U.S. Department of Justice of Respondent's husband's assertions that he and his family would be harmed if removed to Albania due to the fact that he was made a material witness in the prosecution of his former boss and had received death threats. pp. 9.

D.  Copy of Motion For Judgment of Default of Bond filed by the government in case L-01-973 in regards to Bill Bedini a/k/a/ Asqeri Bedini. This Motion indicates that Bill Bedini was a fugitive; having fled from prosecution and that his wife had spoken to him after placing a call to Albania after he fled. pp. 10-12.

E.  Copy of Judgment of Default of Bond where the judge finds that the Defendant Bill Bedini has fled the United States. pp. 13-14.

F.  Copy of letter from US. Pretrial Services Officer indicating that Edmond was a material witness in Bill Bedini's case. pp. 15-16.

G.  Copy of Memorandum issued by the court. This document is submitted to this honorable court to show this court that Bill Bedini; his wife Mirela Bedini and his son Erick Bedini were all defendants in case number L-01-973. pp. 17-19.

H.  Copy of the asylum application of Lorena Demiraj, niece of Edmond Demiraj, and the Immigration Judge's Order dated December 6, 2004 granting her asylum due to the blood feud between Edmond Demiraj's family and the family of his former boss, Bill Bedini. In Albania, she was kidnapped along with one of her sisters by Bill Bedini and his associates a little over a month after Edmond Demirjaj was shot there. pp. 20 – 31.

I.  Copy of the asylum application of Sefide Demiraj, niece of Edmond Demiraj, and the Immigration Judge's Order dated December 6, 2004 granting her asylum due to the blood feud between Edmond Demiraj's family and the family of his former boss, Bill Bedini. In Albania, she was kidnapped along with one of her sisters by Bill Bedini and his associates a little over a month after Edmond Demirjaj was shot there. pp. 32 - 43.

J.  Copy of *Feud forces asylum-seeker into hiding*, Rebecca DiGirolamo and Natalie O'Brien, Herald and Weekly Times (Nov. 24, 2003). This article describes blood feuds in Albania. Specifically it describes a situation where one family is intent on killing the

members of another family because a member of the family was killed accidentally in an automobile-motorcycle accident. pp. 44 - 45.

K. Copy of *Eyewitness: Albania's blood feuds,* Mike Donkin, BBC NEWS (May 5, 2002). This article describes the tradition of blood feuds in Albania and the Albanian government's inability to protect targets of blood feuds. pp. 46-50.

L. Copy of Article, *Genocide Watch: "Honour" Killings and Blood Feud* (03/30/2004). Blood Feuds in Albania are discussed from page 58 to the end of the article. pp. 51-61.

M. Copy of *Albania: Country Reports on Human Rights Practices – 2004,* U.S. Department of State (February 28, 2005). In this report portions of pages 62, 63, 65, and 70 support the Respondents' claim in regard to country conditions. Specifically, these pages discuss blood feuds and the overwhelming corruption of the government of Albania which would either not protect the Respondents or would assist the persons they fear due to the overwhelming corruption in the government. The report specifically noted the high level of corruption within the security, police forces and judiciary, stating that "Corruption remained a major obstacle to meaningful reform in the country." *See Page* 9. pp. 62-78.

N. Copy of letter sent to Respondent's previous counsel, Judy Vacanti to ascertain why she did not advise Respondent to file Motion to Remand her pending appeal when Respondent notified her that her husband had been shot in Albania and had returned to the United States and copy of proof of mailing and receipt. Ms. Vacanti's response will be submitted when it has been received. pp. 79-81.

O. Respondent Rediol Demiraj's completed I-589 Application for asylum and withholding of removal. pp. 82-91.

P. Copy of birth certificate of Rediol Demiraj and the English translation with translator's certificate indicating that Rudina and Edmond Demiraj are the parents of Rediol Demiraj. pp. 9295.

Q. Completed I-589 Form: Asylum & Withholding Application of Rudina Demiraj, Rediol's mother. pp. 96-104.

R. Rudina Demiraj's Statement. pp. 105-106.

S. Copy of Edmund Demiraj's Statement. pp. 107-108.

T. Copy of Immigration Judge's Order granting Withholding of Removal To Mr. Edmund Demiraj ("Demiraj"). pp. 109.

U. Copy of Marriage Certificate of Edmund Demiraj and Rudina Demiraj with English translation. pp. 110-111.

V.  Copies of Appearance Bond indicating Demiraj was a material witness in a case in 2002. pp. 112-116.

W.  Copy of response from former the Office of Internal Audit, INS, U.S.D.O.J in regards to notification by Demiraj's attorney of Demiraj's fear of being deported due to fear of harm from Bill Bedini.  pp. 117.

X.  Forensic Medical Report indicating Demiraj was treated for a gun shot wound sustained in March 2003 in Albania with English translation and translator's certificate.  pp. 118-120.

Y.  Copy of *Albanian Government Cusp of Another Electoral* Victory, TOL Week in Review (October 2003).  pp. 121-124.

Z.  Copy of *Albania: Human Rights Developments*, Human Rights Watch (2003).  pp. 125-130.

*The most relevant portions of the Articles have been marked for the Court's convenience.*



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
2320 LA BRANCH STREET
HOUSTON, TEXAS

| | | |
|---|---|---|
| IN THE REMOVAL PROCEEDINGS | ) | File Numbers: A95 218 801 |
| | ) | |
| RUDINA DEMIRAJ | ) | |
| | ) | |

**RESPONDENT'S SECOND SET OF EXHIBITS TO BE OFFERED INTO EVIDENCE IN SUPPORT OF HER APPLICATION FOR ASYLUM, WITHHOLDING OF REMOVAL PURSUANT TO THE IMMIGRATION AND NATURALIZATION ACT AND WITHHOLDING OF REMOVAL PURSUANT TO CONVENTION AGAINST TORTURE**

TO THE HONORABLE JUDGE ZIMMER:

Attached are Respondent's Set of Exhibits, which are offered into evidence in the above referenced matter. Copies of the same have been furnished to the Office of the Chief Counsel.

Respectfully submitted,

By: Yvette M. Mastin
MN Bar NO. 0306770
S.D. of Texas Fed. NO. 27987
2323 S. Voss, Suite 400
Houston, TX 77057
Tel. No. 832-251-3662
Fax. No. 832-251-3664
ATTORNEY FOR
RUDINA DEMIRAJ

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing **RESPONDENT'S SET OF EXHIBITS TO BE OFFERED INTO EVIDENCE IN SUPPORT OF APPLICATION FOR ASYLUM, WITHHOLDING OF REMOVAL PURSUANT TO THE IMMIGRATION AND NATURALIZATION ACT AND WITHHOLDING OF REMOVAL PURSUANT TO CONVENTION AGAINST TORTURE** was mailed to the Office of District Counsel, Department of Homeland Security on August 29, 2005 at the following address:

Office of the District Counsel
Department of Homeland Security
P.O. Box 670049
Houston, Texas 77267-0049

Yvette M. Mastin

# INDEX OF EXHIBITS

A.  Copy of the Reasonable Fear Interview Q& A conducted by Asylum Officer Shannon Simmons with Edmond Demiraj on July 1, 2003.  In this interview Mr. Demiraj describes the origin of the blood feud between Bedini and Demiraj and the fact that Bedini shot him prior to his return to the United States to seek safety and asylum.  pp. 1-7.

B.  Copy of photographs of the gunshot wound sustained by Edmond Demiraj after he was shot.  pp. 8.

C.  Copy of acknowledgement to undersigned counsel about Respondent's husband dated December 12, 2002 from Immigration and Naturalization Service, U.S. Department of Justice of Respondent's husband's assertions that he and his family would be harmed if removed to Albania due to the fact that he was made a material witness in the prosecution of his former boss and had received death threats.  pp. 9.

D.  Copy of Motion For Judgment of Default of Bond filed by the government in case L-01-973 in regards to Bill Bedini a/k/a/ Asqeri Bedini.  This Motion indicates that Bill Bedini was a fugitive; having fled from prosecution and that his wife had spoken to him after placing a call to Albania after he fled.  pp. 10-12.

E.  Copy of Judgment of Default of Bond where the judge finds that the Defendant Bill Bedini has fled the United States.  pp. 13-14.

F.  Copy of letter from US. Pretrial Services Officer indicating that Edmond was a material witness in Bill Bedini's case.  pp. 15-16.

G.  Copy of Memorandum issued by the court.  This document is submitted to this honorable court to show this court that Bill Bedini; his wife Mirela Bedini and his son Erick Bedini were all defendants in case number L-01-973.  pp. 17-19.

H.  Copy of the asylum application of Lorena Demiraj, niece of Edmond Demiraj,  and the Immigration Judge's Order dated December 6, 2004 granting her asylum due to the blood feud between Edmond Demiraj's family and the family of his former boss, Bill Bedini.  In Albania, she was kidnapped along with one of her sisters by Bill Bedini and his associates a little over a month after Edmond Demirjaj was shot there.   pp. 20 – 31.

I.  Copy of the asylum application of Sefide Demiraj, niece of Edmond Demiraj,  and the Immigration Judge's Order dated December 6, 2004 granting her asylum due to the blood feud between Edmond Demiraj's family and the family of his former boss, Bill Bedini.  In Albania, she was kidnapped along with one of her sisters by Bill Bedini and his associates a little over a month after Edmond Demirjaj was shot there. pp. 32 - 43.

J.  Copy of *Feud forces asylum-seeker into hiding*, Rebecca DiGirolamo and Natalie O'Brien, Herald and Weekly Times (Nov. 24, 2003).  This article describes blood feuds in Albania.  Specifically it describes a situation where one family is intent on killing the

members of another family because a member of the family was killed accidentally in an automobile-motorcycle accident. pp. 44 - 45.

K.  Copy of *Eyewitness: Albania's blood feuds,* Mike Donkin, BBC NEWS (May 5, 2002). This article describes the tradition of blood feuds in Albania and the Albanian government's inability to protect targets of blood feuds. pp. 46-50.

L.  Copy of Article, *Genocide Watch: "Honour" Killings and Blood Feud* (03/30/2004). Blood Feuds in Albania are discussed from page 58 to the end of the article. pp. 51-61.

M.  Copy of *Albania: Country Reports on Human Rights Practices – 2004,* U.S. Department of State (February 28, 2005). In this report portions of pages 62, 63, 65, and 70 support the Respondents' claim in regard to country conditions. Specifically, these pages discuss blood feuds and the overwhelming corruption of the government of Albania which would either not protect the Respondents or would assist the persons they fear due to the overwhelming corruption in the government. The report specifically noted the high level of corruption within the security, police forces and judiciary, stating that "Corruption remained a major obstacle to meaningful reform in the country." *See Page 9.* pp. 62-78.

N.  Copy of letter sent to Respondent's previous counsel, Judy Vacanti to ascertain why she did not advise Respondent to file Motion to Remand her pending appeal when Respondent notified her that her husband had been shot in Albania and had returned to the United States and copy of proof of mailing and receipt. Ms. Vacanti's response will be submitted when it has been received. pp. 79-81.

O.  Respondent Rediol Demiraj's completed I-589 Application for asylum and withholding of removal. pp. 82-91.

P.  Copy of birth certificate of Rediol Demiraj and the English translation with translator's certificate indicating that Rudina and Edmond Demiraj are the parents of Rediol Demiraj. pp. 9295.

Q.  Completed I-589 Form: Asylum & Withholding Application of Rudina Demiraj, Rediol's mother. pp. 96-104.

R.  Rudina Demiraj's Statement. pp. 105-106.

S.  Copy of Edmund Demiraj's Statement. pp. 107-108.

T.  Copy of Immigration Judge's Order granting Withholding of Removal To Mr. Edmund Demiraj ("Demiraj"). pp. 109.

U.  Copy of Marriage Certificate of Edmund Demiraj and Rudina Demiraj with English translation. pp. 110-111.

V. Copies of Appearance Bond indicating Demiraj was a material witness in a case in 2002. pp. 112-116.

W. Copy of response from former the Office of Internal Audit, INS, U.S.D.O.J in regards to notification by Demiraj's attorney of Demiraj's fear of being deported due to fear of harm from Bill Bedini. pp. 117.

X. Forensic Medical Report indicating Demiraj was treated for a gun shot wound sustained in March 2003 in Albania with English translation and translator's certificate. pp. 118-120.

Y. Copy of *Albanian Government Cusp of Another Electoral* Victory, TOL Week in Review (October 2003). pp. 121-124.

Z. Copy of *Albania: Human Rights Developments*, Human Rights Watch (2003). pp. 125-130.

*The most relevant portions of the Articles have been marked for the Court's convenience.

07/01/2003  04:14  956547⁻ ⁻⁻                    DEPORTATION                    PAGE  01

UNITED STATES DEPARTMENT OF JUSTICE
Immigration & Naturalization Service
Houston Asylum Office

Reasonable Fear Interview Q & A

7/1/03

A File Number: A74 700 122
Applicant:  DE MIRAJ, Edmond          DOB: 07/26/1969  Age: 34
Country of Citizenship:  Albania
Location of Applicant: Port Isabel SPC
Was Attorney Present During Interview? Yes ☐  No ☒
Asylum Officer: Shannon Simmons, ZHN033
Reviewing Officer: Jeff Boyd, SAO ZHN013
Location of Interview: Los Fresnos, TX
District Office: San Antonio, TX

Interpreter: LSA 204 215
Language: Albanian

Start time:        2:29 PM

Interpreter's Oath Completed

I do solemnly swear the following:

-That I speak and understand the English and Albanian language with facility;

-That I have ascertained, by talking with the Applicant in the Albanian language that there
is mutual comprehension between us.

-That in connection with this asylum proceeding, I will truthfully, literally, and fully
translate the questions asked by the Asylum Officer and the answers given by the
Applicant into the English language. I will not add to, delete from, comment on, or
otherwise change the matter to be interpreted. I will immediately notify the officer in this
case if I become aware of my inability to interpret in a neutral manner on account of a bias
against the applicant or the applicant's race, religion, nationality, membership in a
particular social group, or political opinion.

BACKGROUND:

My name is Officer Shannon Simmons.  I am an Asylum Officer with the United States
Immigration & Naturalization Service, authorized by law to administer oaths and take
testimony in connection with enforcement of the Immigration & Nationality laws of the
United States. I am here to take your testimony regarding your request for protection from
removal to Albanian.

Applicant read Form I-899, Paragraph 1.11.

1

1  Q. Do you have any questions about what has been explained to you so far?
2  R. No.
3
4  Q. Can you understand our interpreter well?
5  R. Yes.
6
7  Q. Will you please raise your right hand?  Do you solemnly swear to tell the truth, the whole
8     truth, and nothing but the truth?
9  R. Yes.
10
11  Q. Are you being treated well here at the detention center?
12  R. Very well.
13
14  Q. Do you have any health problems or illness?
15  R. Besides depression and fear that I have of returning to my country, nothing else. I still re-
16     experience what happened to me, three months ago.
17                                    *about*
18  Q. Are you taking any medications?
19  R. Yes, the doctor has given me some medication.
20
21  Q. What kind of medication?     *due to fear and nightmares*
22  R. I'm not sure. I am having problems sleeping. As far as I know, the medication is to help me
23     sleep, and I take it before I go to sleep.
24  *and forget what has happened to me.*
25  Q. You mentioned that you do have an attorney?
26  R. Yes.
27
28  Q. What is your attorney's name?
29  R. I have his business card.  [Business card: Yvette Mastin, 832.251.3662]
30
31  Q. You do have the right to have your attorney present. Would you like to ~~reschedule so that~~ *arrange for*
32     your attorney ~~may~~ attend?
33  R. Yes. She said that she would expect a phone call from you. But if she is not available, I
34     would still like to have it done.
35
36  [Attorney contacted and connected telephonically through LSA.]
37
38  Q. What is your complete and correct name?
39  R. Edmond DIMIRAJ.
40
41  Q. Have you previously used any other names or aliases?
42  R. No.
43
44  Q. What is your date and place of birth?
45  R. July 26, 1969, Pluk, Lusnja, Albania.
46
47  Q. Have you lived anywhere else in Albania?
48  R. No.
49
50  Q. What is your religion?
51  R. Muslim.
52
53  Q. What languages do you speak fluently?
54  R. Albanian.
55
56

07/01/2003  04:14   9565471812                    DEPORTATION                              PAGE

1   Q. Are you a citizen of any other country?
2   R. No.
3
4   Q. Have you ever lived in any other country?
5   R. No.
6
7   Q. Where were your parents born?
8   R. In Albania.
9
10  Q. Are they citizens of any other country?
11  R. No.
12
13  Q. When did you first leave Albania?
14  R. In March 1996, when I came to America for the first time. I arrived in America on April 11,
15     1996.
16
17  Q. You filed for political asylum, is that correct?
18  R. Yes.
19
20  Q. Your application was denied by an immigration judge, correct?
21  R. Yes.
22
23  Q. Because an immigration judge has decided those issues covered in that application, we will
24     not focus on that here. I will ask you more about what happened when you returned to
25     Albania.
26  R. Okay.
27
28  Q. What caused you to return to Albania?
29  R. It is a long story. At the time that my case was with the Board of Immigration Appeals, I was
30     working with another Albanian in home construction and painting. After working for him for
31     three years, he made me a supervisor. His name is Asqeri Bedini, also known as Bill Bedini.
32
33  Q. What happened with Mr. Bedini?                          ↗ via Western Union
34  R. He was on a trip to Europe and called me, asking me to send $2500 to an address in Laredo,
35     TX. He was arrested by INS for bringing illegal immigrants here. At that time his brother came
36     here and told me he wanted me to go back home because the US government was accusing me
37     as well of bring the immigrants. Basically his brother came to my home at about 4 AM on Friday,
38     September 20, when he told me that I was supposed to leave because the government was
39     looking for me. I called my attorney who verified the information. At that time I decided to turn
40     myself in. On September 22, I went to the Immigration Office and turned myself in. At that time
41     the government transferred me to Laredo, TX. The US government accused me of collaboration,
42     money laundering, and bringing in illegal aliens. I went to the court and the judge decided that I  (to dismiss th-
43     was not guilty. The reason why they thought I was collaborating was that on May 12, 2000, I had  charges)
44     to Western Union money to another person here. My boss told me that the money was for new
45     materials.
46
47  Q. Did you know about him bringing in the illegal immigrants?
48  R. At the time when he asked me to do the money transfer, I had no idea. I opened my own
49     painting business, and then I heard about it. I realized what he was doing because after I was
50     working for myself, he asked me to give him $25,000 to bring my wife and son from Albania. At
51     that time, I told him that was too much money for me, and that I would never be able to pay him
52     because I was not making that much. He then told me what he was doing.
53
54  Q. Did he bring your wife and son?
55  R. No.
56

3



1  Q. How did they get here?
2  R. My in-laws found someone whom they paid a lot less to bring them over here.
3
4  Q. Did you testify in court against Mr. Bedini?
5  R. At that time, after the judge decided that I was not guilty, the government dropped charges
6     against me. INS wanted to keep me detained because I did not have proper documents.
7     However, an US prosecutor asked me to cooperate with them. I asked her if she would protect
8     me as well. I decided to testify against him. My uncle helped me get release, and I had to report
9     for supervision to INS and to the court when called. The US government told me that they would
10    help me get proper documents if I helped them.
11
12 Q. Who told you that?
13 R. Marina Garcia Marmolejo, Assistant US Attorney. I also told them that this person was very
14    dangerous, and how he threatened me when I was at the federal prison in Houston. He told me
15    that if I told anybody what I knew that I would be dead.
16
17 Q. How long did you work for Mr. Bedini?
18 R. Two and a half or three years. I don't remember the exact years, but I have it at home on the
19    taxes I paid. I think it was 1997 until the end of 2000.
20
21 Q. When did you return to Albania?
22 R. I went back home on February 11, 2003. At that time, these people admitted that they were
23    guilty. As soon as they admitted they were guilty, this lady, Marina Garcia, asked that I be
24    deported back home because she no longer needed him as a witness.
25                                                              me
26 Q. What happened when you got back to Albania?
27 R. Before I went back, I received a letter from my parents, telling me that this guy, Mr. Bedini,
28    had asked where I was and when I was going back; I gave a translated copy of it to my
29    Deportation Officer. He said that I could go to a different country to hide if I wanted. I told
30    him that I could not go to another country to hide because I didn't have the papers and they
31    would find me anyway.
32
33 Q. Did you specifically tell the officer that you were afraid to go back to Albania Italy?
34 R. Yes, I told him and they released me in Italy. I told them I was not able to go back because
35    this guy was extremely dangerous in Albania.
36
37 Q. Did you tell them you were afraid while you were still in the US?
38 Q. Yes, I told them three times. My attorney also told them this, but they said that the order was
39    for me to go back there.
40
41 Q. Where did you go when you returned to Albania?
42 R. I went back to my home with my parents.
43
44 Q. What happened while you were there?
45 R. My parents told me that they had some money, and I could use that, and also find a job until
46    I could ask the US government if I could come back here. I also have a son who is a US
47    citizen. I returned to Albania on February 11, 2003, and on March 7, 2003, this guy Bedini
48    found me. He was with two other people. They took me and put me in a car; I wrote down
49    the license plate number. They started to beat me up and asked what I told the US
50    government, as well as why I spied on them. He shot at me, and it hit my left arm. The
51    second time, his gun did not work. The neighbors heard the shot and came out. Bedini and
52    his friends got in their car and left.
53
54 Q. Did the bullet go into your body?
55 R. Yes, I have a mark on my arm. The doctor told me I was lucky it did not go into my kidneys,
56    although it did go into my body.

4



1
2    Q.  Did you know the two men who were with Mr. Bedini?
3    R.  Yes.
4
5    Q.  Who were they?            *Sotir's brothers-in-law + Bedini*      ~~SOTIR~~
6    R.  [Pointing to indictment] ~~Sotir Xhielaj~~, another person involved, and his wife is from the same
7        area I am from; her brothers got really upset that I testified against them. Her other brother
8        was with him when they shot ~~at~~ me. I told Mr. Bedini that I did not cooperate with the US
9        government, which is why I was sent back home. They said they didn't believe that was true.
10
11 ← Q.  Did you see these men again after they shot you?
12    R.  He kept calling me at home from this phone number. I got this number from caller id.
13
14 ← Q.  Did you talk to him when he called?
15    R.  Yes. He told me he was waiting for Sotir and then they would come back to my case.
16
17    Q.  What did you think he meant by that?
18    R.  This was basically a threat to me. He also threatened me and said that he would kidnap my
19        nieces and send them as prostitutes to Italy.
20
21    Q.  Does Bedini have any connections with the government or police in Albania?
22    R.  Yes, he has connections to them. The government and police look for these people with
23        whom to collaborate for money.
24
25    Q.  Did you report to the police that he shot you?
26    R.  Yes, and when I was in the hospital, they did not send anyone to protect me. My family
27        removed me from the hospital because there was not anyone there to protect me.
28
29    Q.  Where did you go when you left the hospital?
30    R.  My parents took me to the place of some friends. As soon as I was released, I went back
31        home, but then he started calling me, so they took me there just to be safe.
32
33    Q.  Has he contacted anyone in your family since you left Albania?
34    R.  I don't know; my nieces do not live at home any more because they are afraid of kidnap.
35        Some people did try to break in, but could not get in the door. They left because the
36        neighbors came out due to the noise.
37
38    Q.  How did you travel back to the United States?
39    R.  My parents had saved some money to help me, so they paid someone to take me. From
40        Greece to Germany to Mexico and then to the US.
41                        *↳ Belgium*
42 ← Q.  Did the police ever arrest anyone for shooting you?
43    R.  No, they did not do anything. One of the police officials came and told me that the Albanian
44        police would not protect my life because I had made a mess with the American government,
45        not the Albanians. He said that because these things had happened in the US they would
46        not protect me. That is why my government did not give me any report even though we
47        asked them to send one. Basically the police said they were not going to help me because
48        everything that happened was outside Albania. He told me to ask for help at the US
49        embassy.
50
51    Q.  So they never punished anybody for shooting you?
52    R.  No, not at all. The government cooperates with criminals, and this is what is going on there
53        now in Albania.
54
55    Q.  Do you know if they are cooperating in any way with Mr. Bedini?

1  R.  ~~I am not sure.~~ However, basically, I gave them all the information I knew — the names and
2     the license numbers from the car — and they did not do anything.  To tell you the truth, I did
3     not have a lot of time to pursue this investigation because I was preparing to leave to save
4     my life.  I was doing a private investigation myself due to the government's inaction.
5
6  Q.  What kind of private investigation were you doing?
7  R.  I paid somebody to protect me and check to see if anybody was looking for me, like Sotir.
8     Basically I was afraid that these four people here would come to my house and bomb it,
9     which happens in Albania.
10
11  Q.  What did the investigator tell you?   *the US*
12  R.  He did not tell me that much; mostly he was communicating with my parents.  I was waiting to
13     heal so that I could travel back to the US.  I believe Sotir is in Albania because he only had three
14     months grace period to stay in Albania; and more than three months have gone, so I believe that
15     he is there now;  he was in jail during that time.  One of the reasons I'm really afraid to go back
16     home is that this guy Sotir is really upset because he had the paperwork to remain here legally,
17     but those were taken from him when he was put in prison, and then he was to be sent back
18     home.   *Sotir, Bedini, Sotir's brothers (in law)*
19
20  Q.  Do you have any reason to fear harm from the authorities in Albania?
21  R.  Yes, I do fear because this is the same government that put my parents in a labor camp and
22     put my uncle in jail.  Only the name has changed, the Labor Party is now called the Socialist
23     *and* Party.  It is the same people, so that is why they do not protect my life.  I was born in one of
24     *father* the internment camps.  The same government was there from my birth until 1990.  They
25     *(20 yrs.)* came back to power in 1997.
26
27  Q.  Do any members of your family in Albania belong to any *political* groups or organizations?
28  R.  Yes, my parents are members of the Democratic Party.
29
30  Q.  Have you ever been a member of the party?
31  R.  Years ago, yes.
32
33  Q.  Have your parents recently had any problems because they are in the Democratic Party?
34  R.  My father has been beaten up by police in Tirana.
35
36  Q.  When?
37  R.  I am not sure, but it happened this year.
38               *could*
39  Q.  Do you think that you safely live in any part of Albania?
40  R.  This individual is very powerful, and there are only 3 million people living there in a small area.
41     If he wants to find me, he can in a very short time.
42
43  Q.  Have you ever committed a crime in the United States, or in any other country?
44  R.  No.  As I told you before, I was accused by the US government, but I was not charged.
45
46  Q.  Have you or anyone in your family ever associated with or assisted any terrorist
47     organizations?
48  R.  No, absolutely not.  I have tried to catch terrorists.
49
50  Q.  Have you ever harmed another human being?
51  R.  No.
52
53  Q.  Did you have any problems understanding the interpreter during this interview?
54  R.  No.
55
56



6

Q. Is there any other information regarding your request for protection in the US that we did not discuss?

R. I just wanted to let you know that the US government did not protect my life when I decided to cooperate with them. They basically made my name public. This might also cost me my life.

Q. (To attorney) Are there any other lines of inquiry that you would like to address?

R. I didn't meet Edmond until after he had been named a material witness and was out on bond. He was then re-detained by INS and attempted to convey his fear of returning to Albania. I contacted a DOJ OIG inspector about officials in Laredo. We received confirmation from them that they had received our complaint. Bedini, after realizing Edmond was going to testify against him, was released on bail and jumped bail.

Q. Did Mr. Bedini specifically mention your testimony when you saw him in Albania?

R. The very first thing that he told me was asking why I betrayed him and told the US government about him. He also added did I remember what he told me at the federal prison, that there would be consequences for my life if I told anyone about what I knew.

Q. How did you find out that he left the US?

R. The prosecutor told me about it.


**INTERVIEW ENDED**: 7/1/03 at 4:10 PM


_Shannon Simmons_                              Date: 7/1/03
Shannon Simmons, AO


_Edmond Demiraj_
Edmond DEMIRAJ


_Anne Boggs_
WITNESS


Q. When did you come back to the US the 2nd time?
A. April 24, 2003.

Q. How long were you in the hospital?
I did not stay long because my family was worried about my life. Because I had no protection my father removed me, signing a document saying he was taking me without a doctor's permission. He paid a private doctor and to come and check on my wounds.





8



**U.S. Department of Justice**
Immigration and Naturalization Service
Office of Internal Audit

*425 I Street NW*
*Washington, DC 20536*

DEC 1 2 2002

Yvette M. Mastin
Kuniansky & Rozan
5051 Westheimer, #700
Houston, TX 77056

Dear Ms. Mastin:

    Your complaint has been received on behalf of Edmond Demiraj by the Office of Internal Audit, Immigration and Naturalization Service, and has been assigned case number 03X01043. We have initiated action to resolve the allegation(s). You will be notified of the outcome upon completion of our work.

    Thank you for bringing this matter to our attention.

            Sincerely,

            Sue Armstrong
            Assistant Director
            Internal Investigations Branch



FILED

02 FEB -7 PM 3:34

U.S. COURTS
SOUTHERN DISTRICT
OF TEXAS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V | § | CRIMINAL NO. L-01-973-S |
| | § | |
| BILL BEDINI | § | |
| a/k/a ASQERI BEDINI | § | |

MOTION FOR JUDGMENT OF DEFAULT OF BOND

NOW COMES the United States of America by and through its United States Attorney in

and for the Southern District of Texas, and makes this its Motion for Judgment of Default of Bond

of BILL BEDINI, a/k/a ASQERI BEDINI defendant in the above-captioned case, and as grounds

for such motion states as follows:

On October 25, 2001, in Laredo, Texas, in the Laredo Division of this Court, Defendant BILL

BEDINI executed an Appearance Bond for his appearance provided herein, a copy of said bond

being attached hereto as Exhibit "A," the defendant having theretofore been admitted to bail in the

sum of $100,000.00 secured by surety Luto Luigi Bekaj. Ms. Joan Larson, attorney for defendant,

having deposited in the registry of the Court the sum of $10,000.00 in the form of cash to secure

defendant's bond.

On January 25, 2002, Pretrial Service Officer Jeff Fowler from Houston, Texas advised he

was contacted by defendant and left a message that he had an appointment with his attorney at 5:00

p.m. and would be arriving late to his residence.  Mr. Fowler contacted Defendant's attorney who

advised that there was no pending appointment with Defendant.

154

On January 25, 2002, Pretrial Service Officer Fowler was contacted by the monitoring company and informed that the defendant did not return to his residence.

On January 27, 2002, Pretrial Service Officer Fowler went to defendant's resident and retrieved the electronic monitoring device.

On January 28, 2002, Pretrial Service Officer Jacqueline de los Santos from Laredo, Texas, filed a Petition for Action on Pretrial Release with the U.S. Courts, Southern District of Texas and the Court issued a warrant for the arrest of Defendant BILL BEDINI, a/k/a ASQERI BEDINI for this defendant to be brought before this Court for a hearing to show cause why his bond should not be revoked.

On January 31, 2002, Pretrial Service Officer de los Santos advised that Mirela Bedini, Defendant's wife, claimed to have spoken to Defendant Bill Bedini, a/k/a ASQERI BEDINI, after she placed a telephone call to Albania.

Therefore, for the above reasons, the Government requests this Honorable Court to forfeit the bond of Defendant BILL BEDINI for such breach of condition of said bond.

WHEREFORE, the United States of America prays that under the provisions of Rule 46(e)(3), Federal Rules of Criminal Procedure;

(1) that the Court prescribe that notice of this motion be given by mailing a copy of the same to the Defendant BILL BEDINI, a/k/a ASQERI BEDINI Surety Luto Luigi Bekaj, and to Attorneys Joan Larson and Norman J. Silverman, for a hearing at a date and time set by the Court;

(2) that the Clerk mail copies of such notice and this motion to the Defendant BILL BEDINI, a/k/a ASQERI BEDINI Surety Luto Luigi Bekaj, and Attorneys Joan Larson and Norman J. Silverman, after service of the time of the Clerk;

11

(3) that upon final hearing of this motion, the United States have judgment of default of bond of Defendant BILL BEDINI, a/k/a ASQERI BEDINI and Surety Luto Luigi Bekaj for the sum of $100,000.00. Further, that the United States District Clerk issue a registry check payable to the Treasury of the United States in the sum of $10,000.00, which sum has been deposited in the registry of the Court by Ms. Joan Larson, to secure the defendant's bond, and that said sum be credited against the total amount of bond forfeited.

MICHAEL T. SHELBY
UNITED STATES ATTORNEY


MARINA GARCIA MARMOLEJO
Assistant United States Attorney

United States District Court
Southern District of Texas
FILED
BM
APR 2 3 2002
Michael N. Milby, Clerk
Laredo Division

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

United States District Court
Southern District of Texas
ENTERED
APR 2 5 2002
BM
Michael N. Milby. Clerk
Laredo Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | CRIMINAL NO. L-01-973S |
| | § | |
| BILL BEDINI, A/K/A ASQERI BEDINI | § | |

## JUDGMENT OF DEFAULT OF BOND

The Court has considered the motion of the United States of America for judgment of default of bond of BILL BEDINI, a/k/a ASQERI BEDINI, defendant in the above-captioned case. After having considered the pleadings and all file materials, the Court makes the following findings of fact and enters the following judgment:

It appearing to the Court and the Court so finds that there has been a breach of condition of the Appearance Bond of BILL BEDINI, a/k/a ASQERI BEDINI, principal, executed on October 25, 2001 and said bond also executed by Luto Luigi Bekaj, surety, that Defendant Bill Bedini failed to comply with conditions of his release, after being instructed to do so by the United States Magistrate Judge. It has been repeatedly confirmed that this Defendant has fled the United States and apparently has no present intention to voluntarily return. On January 28, 2002, the Court issued a warrant for the arrest of Defendant BILL BEDINI, a/k/a ASQERI BEDINI for this defendant to be brought before this Court for a hearing to show cause why his bond should not be revoked. To date, he has not been arrested.

Whereupon, on motion of the United States of America, this Court now declares forfeiture of the bond of the said BILL BEDINI, a/k/a ASQERI BEDINI, for such breach of condition of said

 



bond. A written Motion for Judgment of Default of Bond was filed and a copy of same was sent to Defendant's last known address, Surety Luto Luigi Bekaj, and Attorneys Joan Larson and Norman J. Silverman, by certified mail. All parties were notified that the Court would hear the Government's motion for default of bond and a hearing was held as scheduled by the Court on April 22, 2002.

It is therefore ORDERED, that the United States of America have judgment of default of bond of BILL BEDINI, a/k/a ASQERI BEDINI, principal, and that the United States do have and recover from BILL BEDINI, a/k/a ASQERI BEDINI and LUTO LUIGI BEKAJ, Surety, jointly and severally, the sum of $100,000.00, together with interest to such sum at the rate of 2.25 percent per annum, computed daily and compounded annually until paid in full from date of judgment, and costs of this proceeding.

The cash sum of $10,000.00 has been deposited in the registry of the Court by Ms. Joan Larson in partial security on this bond. It is further ORDERED that the Clerk of this Court issue a Registry Check in the sum of $10,000.00 payable to the Treasury of the United States, and that said check be deposited to the appropriate account in the Treasury of the United States to be credited against the total amount of this bond forfeiture.

It is further ORDERED that the United States have execution thereon against the Defendant BILL BEDINI, a/k/a ASQERI BEDINI, and Luto Luigi Bekaj, Surety, as well as all other writs and process available and necessary to collect the balance of the judgment and any necessary costs.

DONE at Laredo, Texas, this 23rd day of April, 2002.

CHIEF UNITED STATES DISTRICT JUDGE

14



United States District Court
Southern District of Texas
FILED
MAY - 7 2002    BM
Michael N. Milby, Clerk
Laredo Division

United States District Court
Southern D          Texas
MAY 0 8 2002    JM
Michael N. Milby, Clerk
Laredo Division

**Date:**      **May 7, 2002**

**From:**      **David M. Medellin**
              **U.S. Pretrial Services Officer**

**To:**        **George P. Kazen**
              **Chief U.S. District Judge**

**Subject:**   **Edmond Demiraj (Material Witness)**
              **L-01-CR-973**

**RE:**        **Case L-01-CR-973**
              **Bill Bedini et al**

Edmond Demiraj has been held as a material witness on the case of Bill Bedini and others since April 29, 2002.

Pretrial Services was contacted by Emin Shehu, and he stated he would be willing to co-sign on the material witness' bond.  Mr. Shehu is the material witness' uncle and a Naturalized U.S. citizen.  Mr. Shehu is currently retired and has been residing in San Leon, Texas since 1982.

Pretrial Services recommends the following to assure the proper supervision of this material witness:

      1. $5,000 unsecured bond, requiring a family member as co-surety .
         Co-surety:        Emin Shehu
                            431 7th Street
                            San Leon, Tx., 77539
                            Tel#: (281) 339-3221

N:\WPFILES\MEMO\DEmiraj,Edmond.MW.wpd
Last updated: May 7, 2002

1 5



L-01-cr973  #192          Page 1/2

Re: Edmond Demii

2. The material witness is to reside at the following address:

> 535 W. Nasa Rd. Apt. 1099
> Webster, Texas 77598
> Tel: 281-338-2877

3. Once paperwork is secured with Immigration and Naturalization Services, this material witness is to reside at the above listed address and his travel will be restricted to Harris County and surrounding counties only. No travel will be allowed beyond the restricted area unless allowed by the Court. Travel allowed to Laredo, Texas for case related matters only.

The Court concurs / ~~does not concur~~ with the recommendation, *upon being advised that the US Atty's office supports the proposal*

_____
George P. Kazen
Chief U.S. District Judge

_____
5/7/02
Date

dmm
SUSPSO:ᴍᴄ

N:\WPFILES\MEMO\DEmiraj.Edmond.MW.wpd
Last updated: May 7, 2002

16    

United States District Court
Southern District of Texas
FILED

FEB - 8 2002

Michael N. Milby, Clerk

United States District Court
Southern District of Texas
ENTERED

FEB - 8 2002

Michael N. Milby, Clerk
Laredo Division

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. L-01-973 |
| | ) | |
| BILL BEDINI, AKA ASQERI BEDINI | ) | |
| MIRELA BEDINI | ) | |
| ERICK BEDINI | ) | |
| SOTIR XHIOLAJ | ) | |

## MEMORANDUM

In a Memorandum and Order of January 14, 2002, the Court requested briefing from any parties as to whether the overall activity of the alleged co-conspirators is one overriding conspiracy with multiple objectives, or is really multiple conspiracies as alleged. (Docket No. 144). Although Defendant Mirela Bedini and the Government have briefed this issue (Docket Nos. 147, 148), neither of their commentaries were particularly illuminating. The Government's reliance on the "same evidence" rule is misplaced in the context of conspiracies. Moreover, the Fifth Circuit has expressly disavowed as unhelpful the analyzing of conspiracies in terms of chains and wheels, as Mirela Bedini has done. See United States v. Payne, 99 F.3d 1273, 1279-80 (5th Cir. 1996); United States v. Morris, 46 F.3d 410, 415 & n.2 (5th Cir. 1995). Instead, the Fifth Circuit has developed two distinct tests to determine how many conspiracies exist. Some cases indicate that the court should consider three factors: 1) the existence of a common goal; 2) the nature of the scheme; and 3) the overlapping of the participants in the various dealings. See, e.g., United States v. Gallardo-Trapero, 185 F.3d 307, 315 (5th Cir. 1999); United States v. Morgan, 117 F.3d 849, 858 (5th Cir. 1997); United States v. Fields, 72 F.3d 1200, 1210 (5th Cir. 1996); United States v. Morris, 46 F.3d 410, 415 (5th Cir. 1995). Other cases suggest that the

17

15

court analyze five factors: 1) the time periods of the alleged conspiracies; 2) the persons acting as co-conspirators; 3) the statutory offenses charged in the indictment; 4) the overt acts charged by the Government, or any other description of the offense charged that indicates the nature and scope of the activity the Government seeks to punish; and 5) the places where the alleged events occurred. See, e.g., United States v. Delgado, 256 F.3d 264, 272 (5th Cir. 2001); United States v. Thomas, 12 F.3d 1350, 1357 (5th Cir. 1994); United States v. Rena, 981 F.2d 765, 770 (5th Cir. 1993); United States v. Lokey, 945 F.2d 825, 833 (5th Cir. 1991). There appears to be substantial overlap between the two tests. In both, the ultimate issue is how many different agreements were made. As the Supreme Court has stated, "[a] single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies." United States v. Broce, 109 S. Ct. 757, 763 (1989).

Ultimately, determination of the number of conspiracies must be based on the evidence presented at trial. However, having analyzed the pending indictment in light of the above factors, the Court perceives a potential problem. "Charging a single offense under more than one count of an indictment is multiplici[t]ous and raises the Double Jeopardy specter of multiple punishments." United States v. Sharpe, 193 F.3d 852, 865 (5th Cir. 1999). Beyond the concern over multiple sentences, the Supreme Court has held that the rule against multiplicity also guards against multiple convictions for the same offense. See Ball v. United States, 105 S. Ct. 1668, 1673 (1985). If the indictment were to go to the jury in its present form, the Court would be required to give the instruction on multiple conspiracies, which can be confusing in itself. If the jury determined that one conspiracy existed but not several, a serious problem would result as to

2

which count would correspond to that solo conspiracy. This problem would affect the instructions and the deliberations.

The parties are directed to consider the authorities cited above and be prepared to address the issue at the pre-trial conference on **February 15, 2002**.

**DONE** at Laredo, Texas, this 8th day of February, 2002.

CHIEF UNITED STATES DISTRICT JUDGE

3

19

OMB No. 1115-0086

U.S. Department of Justice
Immigration and Naturalization Service

## Application for Asylum and for Withholding of Removal

**Start Here - Please Type or Print.**   USE BLACK INK. SEE THE SEPARATE INSTRUCTION PAMPHLET FOR INFORMATION ABOUT ELIGIBILITY AND HOW TO COMPLETE AND FILE THIS APPLICATION. (Note: There is NO filing fee for this application.)

*Please* check the box if you also want to apply for withholding of removal under the Convention Against Torture.   [X]

PART A. I.    INFORMATION ABOUT YOU

| 1. Alien Registration Number(s) (A#'s) (If any)   None | 2. Social Security No. (If any)   None |
|---|---|

| 3. Complete Last Name   Demirai | 4 First Name   Lorena | 5. Middle Name   NA |
|---|---|---|

6. What other names have you used? (Include maiden name and aliases.)
none

| 7. Residence in the U.S.   C/O Edmund Demirai | Telephone Number   832-251-3662 |
|---|---|
| Street Number and Name   535 Nassa Rd | Apt. No.   2008 |
| City   Webster | State   TX | ZIP Code   77598 |

| 8. Mailing Address in the U.S., if other than above   Yvette M. Mastin, Atty | Telephone Number   832-251-3662 |
|---|---|
| Street Number and Name   2323 South Voss Rd | Apt. No.   400 |
| City   Houston | State   TX | ZIP Code   77057 |

| 9. Sex [ ] Male [X] Female | 10. Marital Status: [X] Single [ ] Married [ ] Divorced [ ] Widowed |
|---|---|

| 11. Date of Birth (Mo/Day/Yr)   02/12/1984 | 12. City and Country of Birth   Lushnie, Albania |
|---|---|

| 13. Present Nationality (Citizenship)   Albanian | 14. Nationality at Birth   Albanian | 15. Race, Ethnic or Tribal Group   white | 16. Religion   Muslim |
|---|---|---|---|

17.    Check the box, a through c that applies:   a. [X]  I have never been in immigration court proceedings.
b. [ ] I am now in immigration court proceedings.   c. [ ] I am not now in immigration court proceedings, but I have been in the past.

18. Complete 18 a through c.
a. When did you last leave your country? (Mo/Day/Yr)   04/15/03        b What is your current I-94 Number, if any?   none

c.  Please list each entry to the U.S. beginning with your most recent entry.
     List date (Mo/Day/Yr), place, and your status for each entry. (Attach additional sheets as needed.)

| Date | Place | Status | Date Status Expires |
|---|---|---|---|
| 04/30/2003 | Brownsville, TX | EWI | N/A |
| N/A | N/A | N/A | |
| N/A | N/A | N/A | |
| N/A | N/A | N/A | |

| 19. What country issued your last passport or travel document? no passport issued | 20. Passport # N/A   Travel Document = N/A | 21. Expiration Date (Mo/Day/Yr)   N/A |
|---|---|---|

| 22 What is your native language?   Albanian | 23. Are you fluent in English? [ ] Yes [X] No | 24. What other languages do you speak fluently?   None |
|---|---|---|

| FOR EOIR USE ONLY | Action:                                          FOR INS USE ONLY |
|---|---|
| | Interview Date: _____ |
| | Decision: |
| | __ Approval Date: _____ |
| | __ Denial Date: _____ |
| | __ Referral Date _____ |
| | Asylum Officer ID# _____ |

Form I-589 (Rev. 10/18/01)N

20

OMB No. 1115-0086

**PART A. II.    INFORMATION ABOUT YOUR SPOUSE AND CHILDREN**

**Your Spouse.** [x] I am not married. (Skip to *Your Children, below*)

| 1. Alien Registration Number (A#) (If any) NA | 2. Passport/ID Card No. (If any) NA | 3. Date of Birth (Mo/Day/Yr) NA | 4. Social Security No. (If any) NA |
|---|---|---|---|
| 5. Complete Last Name NA | 6. First Name NA | 7. Middle Name NA | 8. Maiden Name NA |

| 9. Date of Marriage (Mo/Day/Yr) NA | 10. Place of Marriage NA | 11. City and Country of Birth NA |
|---|---|---|

| 12. Nationality (Citizenship) NA | 13. Race, Ethnic or Tribal Group NA | 14. Sex  [ ] Male  [ ] Female  NA |
|---|---|---|

15. Is this person in the U.S.? NA  [ ] Yes (Complete blocks 16 to 24.)  [ ] No (Specify location)

| 16. Place of last entry in the U.S.? NA | 17. Date of last entry in the U.S. (Mo/Day/Yr) NA | 18. I-94 No. (If any) NA | 19. Status when last admitted (Visa type, if any) NA |
|---|---|---|---|

| 20. What is your spouse's current status? NA | 21. What is the expiration date of his/her authorized stay, if any? (Mo/Day/Yr) NA | 22. Is your spouse in immigration court proceedings?  [ ] Yes [ ] No  NA | 23. If previously in the U.S., date of previous arrival (Mo/Day/Yr) NA |
|---|---|---|---|

24.    If in the U.S., is your spouse to be included in this application? (Check the appropriate box.)

[ ] Yes (Attach one (1) photograph of your spouse in the upper right hand corner of page 9 on the extra copy of the application submitted for this person.)

[ ] No

NA

**Your Children.** Please list ALL of your children, regardless of age, location, or marital status.

[x] I do not have any children. (Skip to Part A. III.. *Information about Your Background.*)

[ ] I do have children. Total number of children _____

*(Use Supplement A Form I-589 or attach additional pages and documentation if you have more than four (4) children.)*

| 1. Alien Registration Number (A#) (If any) NA | 2. Passport/ID Card No. (If any) NA | 3. Marital Status (Married, Single, Divorced, Widowed) NA | 4. Social Security No. (If any) NA |
|---|---|---|---|
| 5. Complete Last Name NA | 6. First Name NA | 7. Middle Name NA | 8. Date of Birth (Mo/Day/Yr) NA |
| 9. City and Country of Birth NA | 10. Nationality (Citizenship) NA | 11. Race, Ethnic or Tribal Group NA | 12. Sex [ ] Male [ ] Female NA |

13. Is this child in the U.S.? NA  [ ] Yes (Complete blocks 14 to 21.)  [ ] No (Specify Location)

| 14. Place of last entry in the U.S.? NA | 15. Date of last entry in the U.S.? (Mo/Day/Yr) NA | 16. I-94 No. (If any) NA | 17. Status when last admitted (Visa type, if any) NA |
|---|---|---|---|

| 18. What is your child's current status? NA | 19. What is the expiration date of his/her authorized stay, if any? (Mo/Day/Yr) NA | 20. Is your child in immigration court proceedings?  [ ] Yes  [ ] No  NA |
|---|---|---|

21.    If in the U.S., is this child to be included in this application? (Check the appropriate box.)

[ ] Yes (Attach one (1) photograph of your child in the upper right hand corner of page 9 on the extra copy of the application submitted for this person.)

[ ] No

NA

Form I-589 (Rev. 10/18/01)N Pa

21

OMB No. 1115-00F

PART A. II.   INFORMATION ABOUT YOUR SPOUSE AND CHILDREN Conti:

| 1. Alien Registration Number (A#) (If any) | 2. Passport/ID Card No. (If any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. Social Security No. (If any) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (Mo/Day/Yr) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic or Tribal Group | 12. Sex ☐ Male ☐ Female |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

13. Is this child in the U.S.?  ☐ Yes (Complete blocks 14 to 21.)  ☐ No (Specify Location)   N/A

| 14. Place of last entry in the U.S.? | 15. Date of last entry in the U.S.? (Mo/Day/Yr) | 16. I-94 No. (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 18. What is your child's current status? | 19. What is the expiration date on his/her authorized stay, if any? (Mo/Day/Yr) | 20. Is your child in immigration court proceedings? ☐ Yes ☐ No |
|---|---|---|
| N/A | N/A | N/A |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)
☐ Yes (Attach one (1) photograph of your child in the upper right hand corner of page 9 on the extra copy of the application submitted for this person.)
☐ No

| 1. Alien Registration Number (A#) (If any) | 2. Passport/ID Card No. (If any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. Social Security No. (If any) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (Mo/Day/Yr) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic or Tribal Group | 12. Sex ☐ Male ☐ Female |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

13. Is this child in the U.S.?  ☐ Yes (Complete blocks 14 to 21.)  ☐ No (Specify Location)   N/A

| 14. Place of last entry in the U.S.? | 15. Date of last entry in the U.S.? (Mo/Day/Yr) | 16. I-94 No. (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (Mo/Day/Yr) | 20. Is your child in immigration court proceedings? ☐ Yes ☐ No |
|---|---|---|
| N/A | N/A | N/A |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)
☐ Yes (Attach one (1) photograph of your child in the upper right hand corner of page 9 on the extra copy of the application submitted for this person.)
☐ No

| 1. Alien Registration Number (A#) (If any) | 2. Passport/ID Card No. (If any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. Social Security No. (If any) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (Mo/Day/Yr) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic or Tribal Group | 12. Sex ☐ Male ☐ Female |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

13. Is this child in the U.S.?  ☐ Yes (Complete blocks 14 to 21.)  ☐ No (Specify Location)   N/A

| 14. Place of last entry in the U.S.? | 15. Date of last entry in the U.S.? (Mo/Day/Yr) | 16. I-94 No. (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (Mo/Day/Yr) | 20. Is your child in immigration court proceedings? ☐ Yes ☐ No |
|---|---|---|
| N/A | N/A | N/A |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)
☐ Yes (Attach one (1) photograph of your child in the upper right hand corner of page 9 on the extra copy of the application submitted for this person.)
☐ No

N/A

Form I-589 (Rev. 10/18/01) N Page

## PART A. III.    INFORMATION ABOUT YOUR BACKGROUND

1. Please list your last address where you lived before coming to the U.S. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. *(List Address, City/Town, Department, Province, or State, and Country.) (Use Supplement B Form I-589 or additional sheets of paper if necessary.)*

| Number and Street (Provide if available) | City/Town | Department, Province or State | Country | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|---|
| Pallati 210 | Lushnie | Xberdet Meprevi | Albania | 03/1996 | 04/2003 |
| NA | NA | NA | Albania NA | NA | NA |

2. Provide the following information about your residences during the last five years. List your present address first. *(Use Supplement Form B or additional sheets of paper if necessary)*

| Number and Street | City/Town | Department, Province or State | Country | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|---|
| 535 Nassa Rd | Webster | TX | USA | 01/2004 | Present |
| 535 W Nassa Rd 1 #2008 | Webster | TX | USA | 04/2004 | 04/2004 |
| 800 West Nasa Rd. 1 #260 | Webster | TX | USA | 04/2003 | 04/2004 |
| Pallati 210 | Lushnie | | Albania | 04/1996 | 04/2003 |
| NA | NA | NA | NA | NA | NA |

3. Provide the following information about your education, beginning with the most recent. *(Use Supplement B Form I-589 or additional sheets of paper if necessary)*

| Name of School | Type of School | Location (Address) | Attended From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|
| October Eighteen | high school | Lushnie, Albania | 09/1997 | 06/2001 |
| elementary school / middle school | elementary school / middle school | Pluk, Albania | 09/1989 | 06/1997 |
| NA | NA | NA | NA | NA |
| NA | NA | NA | NA | NA |

4. Provide the following information about your employment during the last five years. List your present employment first. *(Use Supplement Form B or additional sheets of paper if necessary)*

| Name and Address of Employer | Your Occupation | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|
| contract employment | odd jobs | 04/2003 | |
| none: | | 04/1999 | 04/2003 |
| NA | NA | NA | NA |
| NA | NA | NA | NA |
| NA | NA | NA | NA |

5. Provide the following information about your parents and siblings (brother and sisters). Check box if the person is deceased. *(Use Supplement B Form I-589 or additional sheets of paper if necessary)*

| Name | City/Town and Country of Birth | Current Location |
|---|---|---|
| *Mother* Qanie Demirai | Viora, Albania | [x] Deceased |
| *Father* Ridvan Demirai | Korea, Albania | [ ] Deceased    Greece |
| *Siblings* Sefide Demiraje | Lushnie Albania | [ ] Deceased    Houston, TX USA |
| NA | NA | [ ] Deceased    NA |

23

PART B.   INFORMATION ABOUT YOUR APPLICATION

*(Use Supplement B Form I-589 or attach additional sheets of paper as needed to complete your responses to the questions contained in PART B.)*

When answering the following questions about your asylum or other protection claim (withholding of removal under 241(b)(3) of the Act or withholding of removal under the Convention Against Torture) you should provide a detailed and specific account of the basis of your claim to asylum or other protection. To the best of your ability, provide specific dates, places, and descriptions about each event or action described. You should attach documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, please explain why in your responses to the following questions. Refer to Instructions, Part 1: Filing Instructions, Section II, "Basis of Eligibility," Parts A - D, Section V, "Completing the Form," Part B, and Section VII, "Additional Documents that You Should Submit" for more information on completing this section of the form.

1.  Why are you applying for asylum or withholding of removal under section 241(b)(3) of the Act, or for withholding of removal under the Convention Against Torture? Check the appropriate box (es) below and then provide detailed answers to questions A and B below:

I am seeking asylum or withholding of removal based on

- [ ] Race
- [ ] Religion
- [ ] Nationality
- [ ] Political opinion
- [X] Membership in a particular social group
- [X] Torture Convention

A. Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?
[ ] No  [X] Yes  If your answer is "Yes," explain in detail:

1) What happened;
2) When the harm or mistreatment or threats occurred;
3) Who caused the harm or mistreatment or threats; and
4) Why you believe the harm or mistreatment or threats occurred.

On April 15, 2003, a black mercedes with license plate VL pulled up in front of me and my sister Sefide. Three men wearing masks came out of the car and grabbed us. They pushed us into the car and blindfolded us. I tried to struggle but they threatened to kill us if we didn't settle down and be quiet. From the car they took us into a house with an iron window. In the room was only two beds and a table. We stayed there for a few hours and after that four people came and took us. I realized we were in Vlora, Albania because I saw the soccor stadium when werew taken outside. This time they separated us. Two persons came with me and two persons went with my sister. After 30 minutes we arrived at the Port of Vlora. They took us from the cars and put us into a boat. In theis boat were other people. After fours hours we were at Bari, Italy. It was dark and we

B. Do you fear harm or mistreatment if you return to your home country See additional information in Supplement B to Form I-589
[ ] No  [X] Yes  If your answer is "Yes," explain in detail:

1) What harm or mistreatment you fear;
2) Who you believe would harm or mistreat you; and
3) Why you believe you would or could be harmed or mistreated.

Yes, I am afraid that I will be kidnapped again by the man that shot my uncle Edmund Demiraj and that the Albanian government will not and cannot do anything to protect me. Many girls are kidnapped in Albania and forced to work as prostitutes in Italy. This man is a known criminal and the Albanian government is not able to stop him and does not even try.

24

OMB No. 1115-0086

---

PART B.   INFORMATION ABOUT YOUR APPLICATION Continued

2.  Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in any country other than the United States?

    ☐ No   ☒ Yes  If "Yes," explain the circumstances and reasons for the action.

Yes, members of our family have been imprisoned by the communist party members in Albania when the communists were in power in Albania.  Additionally members of the socialist party, the former communist party have had members of my family attacked because of their association with the Democratic party in Albania.

3. A.   Have you or your family members ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

    ☐ No   ☒ Yes  If "Yes," describe for each person the level of participation, any leadership or other positions held, and the length of time you or your family members were involved in each organization or activity.

Yes, members of my family have belonged to the Democratic party in Albania.

   B.  Do you or your family members continue to participate in any way in these organizations or groups?

    ☐ No   ☒ Yes If "Yes," describe for each person, your or your family members' current level of participation, any leadership or other positions currently held, and the length of time you or your family members have been involved in each organization or group.

They do participate but no longer in Albania because their lives were threatened.

4.  Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?

    ☐ No   ☒ Yes  If "Yes," explain why you are afraid and describe the nature of the torture you fear, by whom, and why it would be inflicted.

I am afraid that the peolpe who kidnapped me will torture me and kill me for escaping from them.

See additional information in Supplement B to Form I-589
Form I-589 (Rev. 10/18/01)N Page 6

OMB No. 1115-008

## PART C.    ADDITIONAL INFORMATION ABOUT YOUR APPLICATION
*(Use Supplement B Form I-589 or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.)*

1.    Have you, your spouse, your child(ren), your parents, or your siblings ever applied to the United States Government for refugee status, asylum, or withholding of removal?    ☐ No  ☒ Yes

If "Yes" explain the decision and what happened to any status you, your spouse, your child(ren), your parents, or your siblings received as a result of that decision. Please indicate whether or not you were included in a parent or spouse's application. If so, please include your parent or spouse's A- number in your response. If you have been denied asylum by an Immigration Judge or the Board of Immigration Appeals, please describe any change(s) in conditions in your country or your own personal circumstances since the date of the denial that may affect your eligibility for asylum.

My sister Sefide Demiraj is applying for asylum at the same time that I am.  She has not received a decision in her case.

2.    A.  After leaving the country from which you are claiming asylum, did you or your spouse or child(ren), who are now in the United States, travel through or reside in any other country before entering the United States?    ☐ No  ☒ Yes

B.  Have you, your spouse, your child(ren), or other family members such as your parents or siblings ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?    ☒ No  ☐ Yes

If "Yes" to either or both questions (2A and/or 2B), provide for each person the following: the name of each country and the length of stay; the person's status while there; the reasons for leaving; whether the person is entitled to return for lawful residence purposes; and whether the person applied for refugee status or for asylum while there, and, if not, why he or she did not do so.

My sister and I traveled through Italy, France and Mexico before we arrived in the United States.

3.    Have you, your spouse, or child(ren) ever ordered, incited, assisted, or otherwise participated in causing harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion?

☒ No    ☐ Yes If "Yes," describe in detail each such incident and your own or your spouse's or child(ren)'s involvement.

26

Form I-589 (Rev. 10/18/01)N Page

OMB No. 1115-0086

## PART C. ADDITIONAL INFORMATION ABOUT YOUR APPLICATION Continued

4.  After you left the country where you were harmed or fear harm, did you return to that country?

    [X] No   [ ] Yes  If "Yes," describe in detail the circumstances of your visit (for example, the date(s) of the trip(s), the purpose(s) of the trip(s), and the length of time you remained in that country for the visit(s)).

5.  Are you filing the application more than one year after your last arrival in the United States?

    [X] No   [ ] Yes  If "Yes," explain why you did not file within the first year after you arrived. You should be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question, see Instructions, Part 1: Filing Instructions, Section V, "Completing the Form," Part C.

6.  Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted and sentenced for any crimes in the United States?

    [X] No   [ ] Yes  If "Yes," for each instance, specify in your response what occurred and the circumstances: dates; length of sentence received; location; the duration of the detention or imprisonment; the reason(s) for the detention or conviction; any formal charges that were lodged against you or your relatives included in your application; the reason(s) for release. Attach documents referring to these incidents, if they are available, or an explanation of why documents are not available.

Form I-5 89 (Rev. 10/18/01)N Page